EXHIBIT 2

STATE OF NORTH DAKOTA | IN DISTRICT COURT
COUNTY OF WILLIAMS | NORTHWEST JUDICIAL DISTRICT

Elaine Kinnard and Cynthia Fay, Trustees of the Charles T. Fay and Ruth Fay Inter Vivos Trust,

Plaintiffs,

v.

Hess Corporation; Hess Bakken Investments II, LLC; and Hess (Netherlands) U.S. Oil & Gas Holdings, C.V.,

Defendants.

**Complaint**

**Civil No.** 53-2014-CV-00970

---

The Plaintiffs for their Complaint against the Defendants state and allege:

**Parties**

1. The Charles T. Fay and Ruth Fay Inter Vivos Trust ("Fay Trust") was established September 14, 1987.

2. The Fay Trust was amended and restated by an order of December 10, 2008.

3. The Fay Trust's current trustees are Elaine Kinnard and Cynthia Fay.

4. Hess Corporation does business in North Dakota.

5. A subsidiary of Hess Corporation is Hess Bakken Investments II LLC.

6. Hess Bakken Investment II LLC does business in North Dakota.

7. Hess Bakken Investment II LLC was formerly known as TRZ Energy LLC.

Filed - Clerk of District Court
7/29/2014 1:43:13 PM
Williams County, ND

8. Hess (Netherlands) U.S. Oil & Gas Holdings C.V.. a limited liability company, is a subsidiary of Hess Corporation and may hold an overriding interest in the lease at issue in this lawsuit.

**Property at Issue and Nature of the Suit**

9. This suit pertains to minerals in Williams County located at:

> Township 157 North, Range 99 West
> Section 17: N½NE¼, SW¼NE¼, NW¼, NW¼SW¼

10. The Trust owns minerals in these Section 17 tracts.

11. The issue is whether the oil and gas lease issued in 2010 on behalf of the Fay Trust for the Section 17 tracts has terminated or whether the lease remains in force.

12. Title to minerals in the Section 17 tracts is not at issue in this suit.

**The Oil and Gas Lease**

13. In June of 2010, the Fay Trust trustees issued an oil and gas lease to TRZ Energy LLC.

14. Hereafter, this oil and gas lease is referred to as "lease," "the lease," or the "Fay Trust lease."

15. The lease is dated June 14, 2010.

16. When issued, the lease covered tracts of land in six sections in Williams County, that is:

<u>Township 157 North, Range 99 West</u>
Section 2: S½SW¼, S½SE¼
Section 11: NE¼, W½
Section 14: S½NE¼, W½, N½SE¼
Section 16: W½
Section 17: N½NE¼, SW¼NE¼, NW¼, NW¼SW¼
Section 21: NW¼

17. The lease's primary term is three years. The primary term ended June 14, 2013.

18. An accurate copy of the lease is attached as Exhibit A.

19. At some point prior to 2013, either Hess Corporation or Hess Bakken Investment II LLC acquired the lease.

20. Plaintiffs believe the lease, insofar as it pertains to Section 17, is no longer in effect, having terminated at the end of the lease's primary term.

**Drilling History**

21. As mentioned, the lease covers tracts in six sections, that is, Sections 2, 11, 14, 16, 17, and 21.

22. The first well drilled and completed on lease acreage was the Redfield 14-23-157-99H Well, identified by the North Dakota Industrial Commission as File No. 19787.

23. This well was drilled on a 1,280-acre spacing unit comprised of Sections 14 and 23-157-99, established by the Industrial Commission for the Bakken Pool.

24. This well was spud in February of 2011 and completed as a producing well in July of 2011.

25. The second well drilled and completed under lease acreage was the Wilhelm 1-21H Well, identified by the Industrial Commission as File No. 21432.

26. This well was drilled on the spacing unit comprised of Sections 16 and 21-157-99, established by the Industrial Commission for the Bakken Pool.

27. This well was spud in October of 2011 and completed as a producing well in December of 2011.

28. The third well drilled and completed under lease acreage was drilled on the spacing unit described above comprising Sections 14 and 23.

29. This well was the Redfield 14-23-2H Well, identified by the Industrial Commission as File No. 23142.

30. This well was spud July of 2012 and completed as a producing well in October of 2012.

31. The fourth well drilled and completed under lease acreage was the Wilhelm 3-21H Well, identified by the Industrial Commission as File No. 23052.

32. This well was drilled on a 2,560-acre spacing unit comprised of Sections 16, 21, 28, and 33-157-99, established by the Industrial Commission for the Bakken Pool.

33. This well was spud in July of 2012 and completed as a producing well in November of 2012.

34. The fifth well drilled and completed under lease acreage was drilled on the spacing unit described above comprising Sections 16, 21, 28, and 33.

35. This well was the Wilhelm 2-21H Well, identified by the Industrial Commission as File No. 23053.

36. This well was spud in July of 2012 and completed as a producing well in November of 2012.

37. The sixth well drilled and completed under lease acreage was drilled in a spacing unit comprised of Section 2 and 11-157-99, established by the Industrial Commission for the Bakken Pool.

38. This well was the Helstad 157-99-2A-11-1H Well, identified by the Industrial Commission as File No. 22826.

39. This well was spud in December of 2012 and, according to the Industrial Commission, it was completed as a producing well on March 10, 2013.

40. Sometime in 2013, drilling commenced for the SC-Bennie 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H-1 Well.

41. This well is identified by the Industrial Commission as File No. 25899 and it is located in the south half of Section 20.

42. As of March 10, 2013, Section 17 was the only tract under the Fay Trust lease that had not been drilled.

43. Sections 17 and 20 in Twp. 157 N. Rge. 99 W., comprise a 1,280-acres spacing unit, established by the Industrial Commission for the Bakken Pool.

44. As of June 14, 2013, a well had not been drilled on Section 17, or on the spacing unit that includes Section 17.

45. As of June 14, 2013, drilling operations for a well on Section 17, or on the spacing unit that includes Section 17, had not begun.

**Notice of Lease Termination**

46. In a notice issued under N.D.C.C. § 47-16-36 and dated October 3, 2013, the Fay Trust informed Hess Corporation that the lease, as it pertains to Section 17, terminated.

47. A copy of the notice is attached as Exhibit B.

48. As a subsidiary of Hess Corporation, Hess Bakken Investments II LLC had the same knowledge of the notice as did Hess Corporation.

49. None of the defendants responded to the notice.

**Claims**

50. The failure to respond to the notice of lease termination, described above, terminated the lease insofar as the lease pertains to Section 17.

51. Because a well had not been drilled nor drilling operations begun for leased acreage in Section 17 by June 14, 2013, the lease terminated insofar as it pertains to Section 17.

52. Because a well had not been drilled nor drilling operations begun for leased acreage in Section 17 within the time required by the lease, the lease terminated insofar as it pertains to Section 17.

53. Because any drilling or drilling operations that were begun on a timely basis for leased acreage in Section 17 were not diligently pursued or continuously prosecuted, the lease terminated insofar as it pertains to Section 17.

**Wherefore**, Plaintiffs ask the Court to:

A. Rule that the Fay Trust lease, insofar as it pertains to Section 17-157-99, terminated in 2013.

B. Rule that Defendants do not have, under the Fay Trust lease, any leasehold, property, mineral, or other interests in Section 17-157-99

C. Require Defendants to provide Plaintiffs with an accounting of all revenue earned and expenses paid that pertain to the SC-Bennie Well.

D. Require Defendants to provide Plaintiffs with all communications sent to and received from working interest owners in the SC-Bennie Well that pertain to that well.

E. Require Defendants to compensate Plaintiffs for any financial losses they may have incurred as a result of Defendants' refusal to acknowledge that the lease terminated in 2013 insofar as it pertains to Section 17.

F. Require Defendants to pay Plaintiffs attorney fees and costs they incur in this litigation.

G. Order any other relief the Court deems just.

Dated this 29th day of July, 2014.

PEARCE & DURICK

*/s/ Charles M. Carvell*

Charles M. Carvell , # *03560*
P.O. Box 400
314 E. Thayer Ave.
Bismarck, ND 58502-400
Telephone (701) 223-2890
#cmcefile@pearce-durick.com

ATTORNEY FOR THE PLAINTIFFS

EXHIBIT A

When recorded, return to:
LoneTree Energy & Associates, LLC
P.O. Box 2506
Williston, ND 58802-2506

53-2014-CV-00970

# OIL AND GAS LEASE

Mid-Producers 88-PAID UP
Rev. 5-60 No. 2 (modified)

AGREEMENT, Made and entered into this 14th day of June, 2010, by and between The Charles T. and Ruth Fay Inter Vivos Trust-As Amended and Re-stated by Order dated 12/10/08, Bradley C. Fay and Elaine C. Kinnard, Co-Trustees, whose address is 106 Sky Ranch Drive, Billings, MT 59106, hereinafter called Lessor (whether one or more) and TRZ Energy LLC whose address is 1050 17th Street, Suite 2200, Denver, CO 80265, hereinafter called Lessee:

WITNESSETH, That the Lessor, for and in consideration of Ten Dollars and more ($10.00+) cash in hand paid, the receipt of which is hereby acknowledged, and the covenants and agreements hereinafter contained, has granted, demised, leased and let, and by these presents does grant, demise, lease and let exclusively unto the said Lessee, the land hereinafter described, with the exclusive right for the purpose of mining, exploring by geophysical and other methods, and operating for and producing therefrom oil and all gas, of whatsoever nature or kind, with rights of way and easements for laying pipe lines, and erection of structures thereon to produce, save and take care of said products, all that certain tract of land being situated in the County of Williams, State of North Dakota, described as follows, to-wit:

**TOWNSHIP 157 NORTH, RANGE 99 WEST, 5th P.M.**
**Section 02: S½SW¼, S½SE¼**
**Section 11: NE¼, W½**
**Section 14: S½NE¼, W½, N½SE¼**
**Section 16: W½**
**Section 17: N½NE¼, SW¼NE¼, NW¼, NW¼SW¼**
**Section 21: NW¼**

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

containing 1,920.00 acres, more or less.

In addition to the land described above, lessor hereby grants, leases and lets exclusively unto lessee, to the same extent as if specifically described lands which are owned or claimed by lessor by one of the following reasons: (1) all lands and rights acquired or retained by lessor by avulsion, accretion, reliction or otherwise as the result of a change in the boundaries or centerline of any river or stream traversing or adjoining the lands described above. (2) all riparian lands and rights which are or may be incident, appurtenant, related or attributed to lessor in any lake, stream or river traversing or adjoining the lands described above by virtue of lessor's ownership of the land described above. (3) all lands included in any road easement or right-of-way traversing or adjoining the lands described above which are or may be incident, appurtenant, related or attributed to lessor by virtue of lessor's ownership of the land described above, and (4) all strips or tracts of land adjacent or contiguous to the lands described above owned or acquired by lessor through adverse possession or other similar statutes of the state in which the lands are located.

1. It is agreed that this lease shall remain in force for a term of Three (3) years from June 14, 2010 and as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided. If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises or on acreage pooled therewith but Lessee is then engaged in drilling or re-working operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises or on acreage pooled therewith, and operations shall be considered to be continuously prosecuted if not more than ninety (90) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well. If after discovery of oil or gas on said land or on acreage pooled therewith, the production thereof should cease from any cause after the primary term, this lease shall not terminate if Lessee commences additional drilling or re-working operations within ninety (90) days from date of cessation of production or from date of completion of dry hole. If oil or gas shall be discovered and produced as a result of such operations at or after the expiration of the primary term of this lease, this lease shall continue in force so long as oil or gas is produced from the leased premises or on acreage pooled therewith.

2. This is a PAID-UP LEASE. In consideration of the cash down payment, Lessor agrees that Lessee shall not be obligated, except as otherwise provided herein, to commence or continue any operations during the primary term. Lessee may at any time or times during or after the primary term surrender this lease as to all or any portion of said land and as to any strata or stratum by delivering to Lessor or by filing for record a release or releases, and be relieved of all obligation thereafter accruing as to the acreage surrendered.

3. In consideration of the premises the said Lessee covenants and agrees:

1st. To deliver to the credit of Lessor, free of cost, in the pipeline to which Lessee may connect wells on said land, the equal Twenty Percent (20.00%) part of all oil produced and saved from the leased premises.

2nd. To pay Lessor Twenty Percent (20.00%) of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline a royalty of Twenty Percent (20.00%) payable monthly at the prevailing market rate for gas.

3rd. To pay Lessor for gas produced from any oil well and used off the premises or in the manufacture of gasoline, or any other product a royalty of Twenty Percent (20.00%) of the proceeds, at the mouth of the well, payable monthly at the prevailing market rate.

4. If, at the expiration of the primary term or at any time or times thereafter there is any well on the leased premises either capable of producing ~~oil or~~ gas then this lease shall not terminate so long as such well is shut in. For each such well, Lessee shall pay or tender to Lessor or Lessor's successor or assigns One Dollar per year per net mineral acre retained hereunder, such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of 90 days from the date such well is shut in and thereafter on or before the anniversary date of this lease during the period such well is shut in. Lessee's failure to pay or tender, or properly pay or tender, any such sum shall render Lessee liable for the amount due but it shall not operate to terminate the lease.

5. If said Lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties (including any shut-in gas royalty) herein provided for shall be paid the said Lessor only in proportion which Lessor's interest bears to the whole and undivided fee.

6. Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for Lessee's operation thereon, except water from the wells of Lessor.

7. When requested by Lessor, Lessee shall bury Lessee's pipe line below plow depth.

8. No well shall be drilled nearer than 200 feet to the house or barn now on said premises without written consent of

Filed - Clerk of District Court
7/29/2014 1:43:13 PM
Williams County, ND

Lessor.

9. Lessee shall pay for damages caused by Lessee's operations to growing crops on said land.

10. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

11. The rights of Lessor and Lessee hereunder may be assigned in whole or part. No change in ownership of Lessor's interest (by assignment or otherwise) shall be binding on Lessee until Lessee has been furnished with notice, consisting of certified copies of all recorded instruments or documents and other information necessary to establish a complete chain of record title from Lessor, and then only with respect to payments thereafter made. No other kind of notice, whether actual or constructive, shall be binding on Lessee. No present or future division of Lessor's ownership as to different portions or parcels of said land shall operate to enlarge the obligations or diminish the rights of Lessee, and all Lessee's operations may be conducted without regard to any such division. If all or any part of this lease is assigned, no leasehold owner shall be liable for any act or omission of any other leasehold owner.

12. Lessee, at its option, is hereby given the right and power at any time and from time to time as a recurring right, either before or after production, as to all or any part of the land described herein and as to any one or more of the formations hereunder, to pool or unitize the leasehold estate and the mineral estate covered by this lease with other land, lease or leases in the immediate vicinity for the production of oil and gas, or separately for the production of either, when in Lessee's judgment it is necessary or advisable to do so, and irrespective of whether authority similar to this exists with respect to such other land, lease or leases. Likewise, units previously formed to include formations not producing oil or gas, may be reformed to exclude such non-producing formations. The forming or reforming of any unit shall be accomplished by Lessee executing and filing of record a declaration of such unitization or reformation, which declaration shall describe the unit. Any unit may include land upon which a well has theretofore been completed or upon which operations for drilling have theretofore been commenced. Production, drilling or reworking operations or a well shut in for want of a market anywhere on a unit which includes all or a part of this lease shall be treated as if it were production, drilling or reworking operations or a well shut in for want of a market under this lease. In lieu of the royalties elsewhere herein specified, including shut-in gas royalties, Lessor shall receive on production from the unit so pooled royalties only on the portion of such production allocated to this lease; such allocation shall be that proportion of the unit production that the total number of surface acres covered by this lease and included in the unit bears to the total number of surface acres in such unit. In addition to the foregoing, Lessee shall have the right to unitize, pool or combine all or any part of the above described lands as to one or more of the formations thereunder with other lands in the same general area by entering into a cooperative or unit plan of development or operation approved by any governmental authority and, from time to time, with like approval, to modify, change or terminate any such plan or agreement, and in such event, the terms, conditions and provisions of this lease shall be deemed modified to conform to the terms, conditions, and provisions of such approved cooperative or unit plan of development or operation and, particularly, all drilling and development requirements of this lease, express or implied, shall be satisfied by compliance with the drilling and development requirements of such plan or agreement, and this lease shall not terminate or expire during the life of such plan or agreement. In the event that said above described lands or any part thereof, shall hereafter be operated under any such cooperative or unit plan of development or operation whereby the production therefrom is allocated to different portions of the land covered by said plan, then the production allocated to any particular tract of land shall, for the purpose of computing the royalties to be paid hereunder to Lessor, be regarded as having been produced from the particular tract of land to which it is allocated and not to any other tract of land; and the royalty payments to be made hereunder to Lessor shall be based upon production only as so allocated. Lessor shall formally express Lessor's consent to any cooperative or unit plan of development or operation adopted by Lessee and approved by any governmental agency by executing the same upon request of Lessee.

13. All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations, and this lease shall not be terminated, in whole or in part, nor Lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or if such failure is the result of, any such Law, Order, Rule or Regulation.

14. Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the Lessee shall have the right at any time to redeem for Lessor, by payment, any mortgages, taxes or other liens on the above described lands, in the event of default of payment by Lessor and be subrogated to the rights of the holder thereof, and the undersigned Lessors, for themselves and their heirs, successors and assigns, hereby surrender and release all right of dower and homestead in the premises described herein, insofar as said right of dower and homestead may in any way affect the purposes for which this lease is made, as recited herein.

15. Should any one or more of the parties hereinabove named as Lessor fail to execute this lease, it shall nevertheless be binding upon all such parties who do execute it as Lessor. The word "Lessor," as used in this lease, shall mean any one or more or all of the parties who execute this lease as Lessor. All the provisions of this lease shall be binding on the heirs, successors and assigns of Lessor and Lessee.

IN WITNESS WHEREOF, this instrument is executed as of the date first above written.

The Charles T. and Ruth Fay Inter Vivos Trust-As Amended and Re-stated by Order dated 12/10/08

Bradley C. Fay, Co-Trustee

Elaine C. Kinnard, Co-Trustee

ACKNOWLEDGMENT

STATE OF Montana )
COUNTY OF Yellowstone ) ss:

BE IT REMEMBERED, that on this 15 day of June, 2010, before me, a Notary Public in and for said County and State, personally appeared, Bradley C. Fay, Co-Trustee of The Charles T. and Ruth Fay Inter Vivos Trust-As Amended and Re-stated by Order dated 12/10/08., known to me to be the identical person(s) described in and who executed the within and foregoing instrument of writing and acknowledged to me that he/she/they duly executed the same as his/her/their free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first written above.

SANDRA J. CATON
NOTARY PUBLIC for the State of Montana
Residing at Billings, Montana
My Commission Expires February 26, 2014

Notary Public for the State of: Montana
Printed Name of Notary: Sandra J. Caton
Residing at: Billings
My Commission Expires: 02-26-2014

ACKNOWLEDGMENT

STATE OF [illegible] )
) ss
COUNTY OF [illegible] )

BE IT REMEMBERED, that on this [illegible] day of [illegible], 2010, before me, a Notary Public in and for said County and State, personally appeared, Elaine C. Kinnard, Co-Trustees of The Charles T. and Ruth Fay Inter Vivos Trust-As Amended and Re-stated by Order dated 12/10/08., known to me to be the identical person(s) described in and who executed the within and foregoing instrument of writing and acknowledged to me that he/she/they duly executed the same as his/her/their free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first written above.




[signature]
Notary Public for the State of [illegible]
Printed Name of Notary: [illegible]
Residing at: [illegible]
My Commission Expires: [illegible]

Oil & Gas Lease Exhibit 'A' for that certain Oil & Gas Lease dated June 14, 2010, by and between **The Charles T. and Ruth Fay Inter Vivos Trust-As Amended and Re-stated by Order dated 12/10/08, Bradley C. Fay and Elaine C Kinnard, Co-Trustees,** and TRZ Energy, LLC.

1) Spacing Unit Pugh Clause (180-days Continuous Drilling)

This lease shall terminate at the end of the primary term as to all of the leased premises except those included within a production or spacing unit prescribed by law or administrative authority on which is located a well producing oil and/or gas and for which Lessor is receiving royalty payments, unless lessee is then engaged in drilling or reworking operations in accordance with the provisions of this lease. In the event that lessee is engaged in said drilling or reworking operations at the expiration of the primary term, the lease shall remain in full force and effect as to all the leased premises so long as a continuous drilling program is maintained whereby not more than 180 days shall elapse from the completion or abandonment of drilling or completion operations upon the last well to the commencement of another well. It is the intent of this paragraph that lands that are not producing oil or gas shall not be held by production after primary term except as allowed in this paragraph. Upon failure to maintain said continuous drilling program, this lease shall then automatically terminate as to such nonproductive part of the leased premises as provided above.

2) Horizontal Pugh Language (180-days Continuous Drilling)

Notwithstanding the provisions of this lease to the contrary, this lease shall terminate after the primary term as to any formation which is greater than one hundred (100') feet below the Deepest Producing Formation in any well covered by lands within this lease or lands pooled therewith. This lease shall not terminate as to formations so long as drilling or reworking operations are being continuously prosecuted if not more than one hundred eighty (180) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of another well.

3) Rig Requirements

Wherever this lease requires the Lessee to commence additional drilling or reworking operations, it is also required that such drilling or reworking operations be diligently prosecuted with a rig of sufficient size, capacity, and type to complete the drilling or reworking contemplated.

5) Shut-in Gas Clause (2-year)

No well shall be shut-in and perpetuate this lease for more than twenty-four (24) months beyond primary term; actual production and payment on production shall be required after such period to perpetuate this lease.

6) Coal Bed Methane

This lease is NOT a lease for coal bed methane.

Signed for Identification:

**The Charles T. and Ruth Fay Inter Vivos Trust-As Amended and Re-stated by Order dated 12/10/08**

**Bradley C. Fay, Co-Trustee**

**Elaine C. Kinnard, Co-Trustee**

**When recorded, return to:**
**LoneTree Energy & Associates, LLC**
**3 West Dry Creek Circle**
**Littleton, CO 80120**

EXHIBIT B

To: Hess Corporation
Mr. David Gibson-Land Manager
P.O. Box 2040
Houston, TX 77252-2040

53-2014-CV-00970

I, Elaine C. Kinnard, the undersigned, owner and co-trustee of the following described mineral lands situated in Williams County, North Dakota described to-wit:

Township 157 North, Range 99 West of the 5th P.M.
Section 17: N1/2NE1/4, SW1/4NE1/4, NW1/4, NW1/4SW1/4

upon which an oil & gas lease dated June 14th, 2010 and for which a Memorandum of Oil & Gas Lease was recorded in Williams County, ND as Document #691260 at 9:52 am on June 30th, 2010, was executed with and given to TRZ Energy LLC; notify you that the lease has terminated or become forfeited by breach of the terms thereof, that I elect to declare and do declare the lease forfeited and void and that, unless you do, within twenty days from this date, notify the recorder of the county as provided by law that the lease has not been forfeited, I will file with the recorder a satisfaction of lease as provided by law, and I demand that you execute or have executed a proper surrender of the lease and that you put the same of record in the office of the recorder of the county within twenty days from this date.

Dated: 3rd day of October, 2013

Signed: [signature]
Elaine C. Kinnard, Co-Trustee of the
Charles T. & Ruth Fay Inter Vivos Trust
106 Sky Ranch Drive
Billings, MT 59106

Filed - Clerk of District Court
7/29/2014 1:43:13 PM
Williams County, ND